UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CAROLINA MEDINA, | ) | Case No.: 10-CV-004760-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| v. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| PATRICK R. DONAHOE, UNITED STATES | ) | |
| POSTMASTER GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Before the Court is Defendant Patrick R. Donahoe's motion for summary judgment, ECF No. 30.[1]  Having considered the evidence, the parties' briefing, and argument, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment for the reasons set forth below.

## I.      Background

This case arises out of alleged race and gender based discrimination and sexual harassment in the workplace.  From 1982 until 2008, Plaintiff Carolina Medina, a 53 year old Hispanic woman, was employed as a mail handler with the United States Postal Service ("USPS") at the San Jose

---

[1] On October 21, 2010, when the complaint was filed, John E. Potter was the United States Postmaster General.  Plaintiff sued Mr. Potter in his official capacity.  The Court notes that the current United States Postmaster General is Patrick R. Donahoe.  Accordingly, the Clerk shall recaption the case as follows: *Carolina Medina v. Patrick R. Donahoe, United States Postmaster General*.

United States District Court
For the Northern District of California

Processing and Distribution Center ("P&DC").  Compl. 4; Scharf Decl. Ex. F, ECF No. 31, at 87.[2]

Plaintiff alleges that from 2003 until 2008 she was subjected to sexual harassment from her male

supervisors and co-workers, which created a hostile work environment.  Compl. 4.  She further

alleges that since 2006, "management" at the San Jose P&DC failed to take corrective action.  *Id.*

### A.      Factual History

The factual record on this motion for summary judgment mostly consists of exhibits

attached to the Declaration of James A. Scharf in Support of Motion for Summary Judgment, as

Plaintiff did not attach any declarations or exhibits to her opposition.  Defendant's exhibits include,

*inter alia*, the following: (1) the USPS Equal Employment Opportunity office's ("USPS EEO

office") Investigative Report, submitted September 24, 2008;[3] (2) affidavits submitted as part of

the USPS EEO office's investigation, including an affidavit from Plaintiff; (3) Plaintiff's medical

records attached to Plaintiff's USPS EEO affidavit; and (4) excerpts of Plaintiff's May 25, 2011

deposition in this federal court action.  The USPS EEO office's Investigative Report and the

attached affidavits were part of the record in the proceedings before the USPS EEO Administrative

Judge ("AJ") and the Equal Employment Opportunity Commission ("EEOC") on appeal, discussed

in Section I.B below.

The Court also considers the facts set forth in Plaintiff's summary judgment opposition of

which Plaintiff has personal knowledge.  The Court deems Plaintiff's opposition to be a sworn

declaration because it includes the following statement: "I claim with all truth and integrity that the

documents that I have hereby submitted are factual and truthful," followed by Plaintiff's electronic

signature.  Opp'n 12.

---

[2] The citations to the Scharf Declaration refer to the page number on the ECF stamp at the top of the page.  Exhibits A through G to the Scharf Declaration are contained in ECF No. 31; Exhibits H through V are contained in ECF No. 32.

[3] Plaintiff appears to have been represented by counsel at some point during the USPS EEO office proceedings.  Plaintiff's responses to Defendant's interrogatories, dated December 30, 2008, are signed by Sheila K. Sexton, of Beeson, Tayer & Bodine, APC as attorneys for Carolina Medina.  Scharf Decl. Ex. P, at 65.  Before this Court, however, Plaintiff was not represented by counsel until the Court appointed pro bono counsel on December 15, 2011.

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

The Court does not, however, consider the facts set forth in Plaintiff's June 8, 2011 Case Management Conference Statement, ECF No. 27, even though it is attached as Exhibit V to the Scharf Declaration.  The Court may not consider this statement because it was neither sworn nor signed under the penalty of perjury.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  A chronological summary of the relevant facts is set forth below.

*2003 Harassment*.  According to Plaintiff's summary judgment opposition, Plaintiff was harassed by her then-supervisor Manny Navarro from 2000 to 2003.  Opp'n 2.  Supervisor Navarro was "constantly asking [her] out," despite Plaintiff's repeated protestations to stop.  *Id.*  Supervisor Navarro would touch Plaintiff's hair "with his hands pretending to brush it with his fingers," caress Plaintiff's shoulders, and comment on "how well [Plaintiff] fit [her] pants."  *Id.* at 3.

On August 20, 2003, Plaintiff complained of Supervisor Navarro's sexual harassment to the USPS EEO office, alleging ongoing harassment since 2000.  Scharf Decl. Ex. O, ECF No. 32, at 47, 51.  Plaintiff contacted the USPS EEO office one day after Supervisor Navarro had taken disciplinary action against Plaintiff for unauthorized overtime.  *Id.* at 51.  Supervisor Navarro was of the opinion that "these claims of sexual harassment surfaced only after [Supervisor Navarro] issued discipline against [Plaintiff]."  *Id.* at 47.  Plaintiff, on the other hand, contends that she waited three years, from 2000 to 2003, to report the harassment because she was scared that Supervisor Navarro would influence her performance evaluation.  Opp'n 7.

On October 10, 2003, the Manager of Distribution Operations ("MDO") Jung Kim, who conducted the investigation into Plaintiff's sexual harassment complaint against Supervisor Navarro for the USPS EEO, concluded that there was insufficient evidence to proceed further with the investigation.  Scharf Decl. Ex. O, at 47-48.  Plaintiff, on the other hand, contends that she "ended up dropping the case" because, among other reasons, none of the four witnesses to the harassment were willing to come forward because they were afraid of retaliation.  Opp'n at 4, 7.  Plaintiff further contends that MDO Kim was telling Plaintiff that Supervisor Navarro "really

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

needed [this] job" and that MDO Kim was sure Supervisor Navarro "didn't mean any of it." *Id.* at 4.

Plaintiff's summary judgment opposition states that in October 2003, her other supervisor, Valentine Gomez, also harassed Plaintiff by slapping her behind. *See* Opp'n 4. Plaintiff did not report this incident "nor write [Supervisor Gomez] up for sexual harassment at any time," because she was scared and had no witnesses. *See id.* Thus, allegations about this incident do not appear in the USPS EEO office's Investigative Report or the attached affidavits, and were therefore not before the USPS EEO AJ or the EEOC on appeal.

Plaintiff's affidavit from the USPS EEO office's investigation dated August 13, 2008 (hereinafter "Plaintiff's USPS EEO Affidavit"), states that sometime in 2003 Plaintiff's co-worker Mike Baptista taped a sign up in the calling conveying room ("CC room") that read "pre-menopausal women work here." Scharf Decl. Ex. F, at 53. Plaintiff was the only woman working in the CC room at the time. *Id.* Defendant does not dispute that this incident occurred. According to Plaintiff, while Plaintiff was out of the room getting Supervisor Gomez's attention, Mr. Baptista took the sign down. *Id.* at 54. Supervisor Gomez's affidavit from the USPS EEO office's investigation dated August 28, 2008, on the other hand, states that he looked for the sign, but did not find it. Scharf Decl. Ex. E at 37. Defendant's counsel admitted at the summary judgment hearing that there was no further remedial action in response to this incident. Hr'g Tr. 9:14-24.

In Plaintiff's May 25, 2011 deposition, Plaintiff testified that sometime in 2003, Mr. Baptista put a plastic sleeve between his legs and pretended to masturbate in Plaintiff's presence. Medina Dep. 45:7-15. Plaintiff testified that she reported this incident to Supervisor Gomez, who allegedly responded that Mr. Baptista was probably "just playing." *Id.* at 45:22-25. Allegations about this incident do not appear in the USPS EEO office's Investigative Report or the attached affidavits, and were therefore not before the USPS EEO AJ or the EEOC on appeal.

Plaintiff also testified in her May 25, 2011 deposition that another time in 2003, Mr. Baptista came into the CC room where Plaintiff was working, took an umbrella between his legs and pretended to masturbate while calling Plaintiff's name and asking her "how she like[d] this

4

United States District Court
For the Northern District of California

one." *Id.* at 46:14-47:7.  Plaintiff testified that she reported this incident to Supervisor Gomez and MDO Kim, both of whom told Plaintiff to "let it go." *Id.* at 47:17-48:7.  Allegations of this incident also appear in Plaintiff's medical records, which are attached to her USPS EEO affidavit, *see* Scharf Decl. Ex. F, at 90, and were therefore before the USPS EEO AJ and the EEOC on appeal.

According to Plaintiff's USPS EEO Affidavit and the attached medical records, on December 5 or 15, 2003, Plaintiff was invited to attend a meeting and become part of the joint steering committee.  Scharf Decl. Ex. F., at 53, 95.  Supervisor Gomez was on the committee and wanted Mr. Baptista on the committee. *Id.* at 53.  Mr. Baptista was angry because Plaintiff, as a woman, was chosen ahead of him, so he escalated the harassment, which made Plaintiff's life miserable and forced her to step down from the Committee. *Id.*

*2004 Harassment.*  According to Plaintiff's medical records attached to her USPS EEO Affidavit, in March 2004, Plaintiff complained to her doctors at Kaiser Permanente about workplace harassment on several occasions. *See* Scharf Decl. Ex. F, at 81-97 (documenting office visits on March 5, 12, 16, and 22, and July 21, 2004).

On March 5, 2004, Plaintiff reported a "stressful working environment" and feeling "anxious and depressed" due to "being harassed by her supervisor and co-workers." *Id.* at 81-82. That day, Dr. Wachs wrote a verification of treatment ("VOT") authorizing Plaintiff not to work in the CC room from March 5, 2004, through March 15, 2004. *Id.*

On March 12, 2004, Plaintiff's supervisor declined to move her from the CC room on the ground that Dr. Wachs's instruction had been too vague. *Id.* at 84.  That day, Plaintiff returned to Kaiser and saw Dr. Azer, who authorized "temporary total disability through [March 16, 2004]." *Id.*

On March 16, 2004, Plaintiff returned to Kaiser and saw a clinical psychologist, Dr. Katz. *Id.* at 87-88.  Plaintiff complained about anxiety attacks and reported that her physical symptoms began in December 2003, in response to the harassment she received from Supervisor Gomez in retaliation for Plaintiff's being invited to sit on the joint steering committee. *See* Scharf Decl. Ex.

F., ECF No. 31, at 53, 87, 95.  Plaintiff also complained to Dr. Katz of harassment from Supervisor Navarro, reporting "little innuendos, caressing & touching . . . after ask[ing] him to stop." *Id.* at 95.  Dr. Katz diagnosed Plaintiff with "Panic Disorder Without Agoraphobia" and "Adjustment Disorder with Mixed Anxiety and Depressed Mood." *Id.* 87.  Dr. Katz recommended that Plaintiff return to work, but stated that Plaintiff "would benefit from a change of supervisor" and that "[o]ptimally, she should not work with, or around, Supervisor Gomez." *Id.* at 88.

Defendant does not deny that in 2004, Plaintiff's male co-workers, Mike Baptista, Mark Combie, and Al Noseworthy, would turn Plaintiff's mail conveyor belt on and off.  Scharf Decl. Ex. E, at 36.  According to Plaintiff, these three male co-workers did this to sabotage Plaintiff's work.  *Id.*  Supervisor Gomez and MDO Kim testified that Plaintiff's three male co-workers did so as a safety precaution, because Plaintiff had a "tendency to overload belt system in CC room," sending mail to the wrong system.  Scharf Decl. Ex. E, at 36; *see also* Ex. H, at 4.

According to Plaintiff's medical records, on March 22, 2004, Plaintiff returned to Kaiser and saw another psychologist Dr. Afrakhteh.  Scharf Decl. Ex. F, at 89.  Plaintiff complained to Dr. Afrakhteh that her "male coworkers have been making sexual innuendoes (e.g. taking a folded, small umbrella, putting it in between their legs, and making sexual gestures/comments)." *Id.* at 90; *see also* Medina Dep. 46:14-23 (naming Mr. Baptista as a participant in this incident).  Plaintiff also complained that her male co-workers lied to her supervisors and blamed Plaintiff for workplace inefficiencies.  Scharf Decl. Ex. F, at 90; *see also id.* at 52, 55.  Dr. Afrakhteh noted that Plaintiff "has been experiencing a high level of stress at her current job assignment" and stated that Plaintiff "would benefit from working in a different physical location." *Id.* at 90.  Dr. Afrakhteh ordered that Plaintiff be given modified duty from March 23, 2004, until April 6, 2004. *Id.* at 89.

On July 21, 2004, Plaintiff returned to Kaiser and saw Dr. Katz again. *Id.* at 96-97.  Plaintiff stated that she had been fine, but that her symptoms returned "after being transferred back to environment where alleged harassment has taken place." *Id.* at 96.  Plaintiff reported symptoms of depression, crying, hypersomnia, lack of appetite, hopelessness, and nausea. *Id.*  Dr. Katz again

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   ordered modified work duties and stated that Plaintiff "would benefit from working in a different

2   environment and away from the individuals who have allegedly abused/harassed her." *Id.* at 97.

3        In her May 25, 2011 deposition, Plaintiff testified for the first time that sometime in 2004

4   she was molested and raped by an unnamed co-worker, but that she did not report this incident to

5   management.  Medina Dep. 27:1-6, 28:4.  Plaintiff explained that she did not tell her supervisors

6   because "[a]t that point [she] was having problems with [her] own . . . immediate supervisor

7   touching [her] inappropriately." *Id.* at 28:22-24.  Allegations about this incident do not appear in

8   the USPS EEO office's Investigative Report or the attached affidavits, and were therefore not

9   before the USPS EEO AJ or the EEOC on appeal.  There is also no evidence that Plaintiff's

10   supervisors were made aware of this incident.

11        *2005.*  According to Plaintiff's Responses to Interrogatories in the USPS EEO case, dated

12   December 30, 2008, in 2005, Plaintiff was assigned to work in the back dock in order to be

13   separated from Mr. Baptista.  Scharf Decl. Ex. P, ECF No. 32, at 64.  She "remained in this

14   assignment for approximately one year and experienced no problems while separated from Mr.

15   Baptista." *Id.*

16        *2006 Harassment.*  According to Plaintiff's USPS EEO Affidavit, on January 28, 2006,

17   Plaintiff complained that Mr. Baptista attempted to enter Plaintiff's car without authorization and

18   requested an investigation.  Scharf Decl. Ex. F, at 55.  According to MDO Kim's Affidavit from

19   the USPS EEO office's investigation, MDO Kim conducted an investigation at Plaintiff's request

20   but found that there was insufficient evidence to continue the investigation.  *See* Scharf Decl. Ex.

21   H., at 5.  At her May 25, 2011 deposition, Plaintiff admitted that she did not consider this incident

22   to be sexual harassment, but Plaintiff testified that management's failure to follow up with an

23   investigation was another form of harassment and discrimination.  Medina Dep. 99:4-13.

24        In her May 25, 2011 deposition, Plaintiff testified that sometime in 2006, Mr. Baptista

25   unzipped his pants, exposed himself, and asked her to perform oral sex. *Id.* at 42:9-43:6.

26   Allegations about this incident do not appear in the USPS EEO office's Investigative Report or the

27

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

attached affidavits, and were therefore not before the USPS EEO AJ or the EEOC on appeal. There is also no evidence that Plaintiff's supervisors were made aware of this incident.

*2008 Harassment.* Plaintiff's USPS EEO Affidavit states that she suffered additional harassment from Mr. Baptista in 2008. Scharf Decl. Ex. F., at 56-57. Supervisor Hideo Sato became Plaintiff's supervisor in late 2007 or early 2008. Supervisor Sato's affidavit from the USPS EEO office's investigation states that Supervisor Sato recalls Plaintiff's complaining about being harassed and feeling threatened by Mr. Baptista. Scharf Decl. Ex. B, at 18-19. Supervisor Sato recalls that thorough investigations were conducted each time that Plaintiff complained. *Id.*

According to Plaintiff's USPS EEO Affidavit, on February 15, 2008, Mr. Baptista drove his forklift past Plaintiff, made eye contact with her, and then pointed two of his fingers at his eyes and then back at plaintiff in a threatening way. Scharf Decl. Ex. F, at 49-50. In her May 25, 2011 deposition, Plaintiff elaborated for the first time that Mr. Baptista said to Plaintiff, "I want you sexually" and mouthed the words "I want to F you" while he drove his forklift past Plaintiff. *Id.* at 106:2-15. These additional details from Plaintiff's deposition do not appear in the USPS EEO office's Investigative Report or the attached affidavits, and were therefore not before the USPS EEO AJ or the EEOC on appeal. There is also no evidence that Plaintiff's supervisors were made aware of these additional details.

On February 21, 2008, Mr. Baptista and Plaintiff had a confrontation, and the record is unclear as to exactly what happened. According to Mr. Baptista's affidavit from the USPS EEO office's investigation, after 11:30 a.m. on February 21, 2008, he heard that Plaintiff was spreading rumors that he was bi-sexual. Scharf Decl. Ex. C, at 23. Mr. Baptista was upset, so he drove his mule past Plaintiff and told her, "you need to shut your mouth." *Id.* According to Supervisor Gomez's affidavit from the USPS EEO office's investigation, after Supervisor Gomez witnessed Mr. Baptista's outburst, Supervisor Gomez admonished Mr. Baptista "on the spot" and told him that he "should not be doing that" behavior. Scharf Decl. Ex. E, at 37. Mr. Baptista claims, in his affidavit from the USPS EEO office's investigation, that Mr. Baptista told Supervisor Gomez in 2005 or 2006 that Plaintiff was spreading rumors about Mr. Baptista's sexuality and requested Mr.

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    Gomez to verify with co-workers if it was true, but "no investigation was done."  Scharf Decl. Ex.

2    C, at 25.  Supervisor Sato's affidavit from the USPS EEO office's investigation also states that Mr.

3    Baptista filed complaints about Plaintiff.  Scharf Decl. Ex. B, at 19.

4          According to Plaintiff's USPS EEO Affidavit, at 11:40 a.m. on February 21, 2008, Mr.

5    Baptista drove his forklift into Plaintiff's workspace and charged at Plaintiff as she was preparing

6    to load mail into a wire basket, yelling "You Bitch.  You're a Bitch.  Shut Up.  You're a bitch and

7    you better shut up or else."  Scharf Decl. Ex. F, at 50.  Plaintiff claims she barely had time to jump

8    out of the way.  *Id.*  After Mr. Baptista left, Plaintiff looked for Supervisor Sato, but could not find

9    him.  *Id.*  Mr. Baptista returned on his forklift at 11:47 a.m. and again attempted to hit Plaintiff with

10   the forklift.  *Id.*  Mr. Baptista was upset because he thought Plaintiff had told Teresa Lee that Mr.

11   Baptista was gay.  *See id.*  Again, Plaintiff looked for Supervisor Sato, but he was not around.  *Id.*

12   at 51.  At 11:57 a.m. Plaintiff walked by Mr. Baptista, who was talking with Supervisor Gomez.

13   *Id.*  Mr. Baptista yelled, "You bitch, you bitch.  Shut up."  *Id.*  According to Plaintiff, Mr. Gomez

14   never tried to stop Mr. Baptista's rant.  *Id.*  Plaintiff states that on February 22, 2008, Mr. Baptista

15   again tried to drive his forklift into Plaintiff's work space and threatened, "Carolina, you better

16   watch yourself.  Accidents happen all the time."  *Id.* at 52.

17          According to Plaintiff's USPS EEO Affidavit, Plaintiff approached her union

18   representative, Irene Arquero, to file a grievance against Teresa Lee for starting rumors and

19   creating a hostile and abusive work environment.  *Id.* at 57.  Plaintiff claims she gave Ms. Arquero

20   a statement recounting the events of February 15 and 21, 2008.  *Id.*  Because Ms. Arquero was

21   stepping down as union officer, Plaintiff approached Nick Mandel to file a grievance on her behalf

22   and gave him a copy of the statement.  *Id.* at 59.  On February 26, 2008, Plaintiff faxed her

23   statement to Senior Plant Manager Balwant Grewel and called the postal inspector.  *Id.* at 60.  It is

24   Plaintiff's understanding that "an investigation was conducted regarding [her] concern of being

25   harassed, stalked, intimidated, and threatened by a co-worker."  *Id.*

26          According to Plaintiff's USPS EEO Affidavit, on February 28, 2008, Plaintiff, Mr. Mandel,

27   and Postal Inspector Woo met.  *Id.* at 61.  Inspector Woo "said he would continue his investigation

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

by speaking with Mike Baptista," and promised "he would speak to Joe Anguiano and let him

know it would be beneficial at this time for Mike Baptista and [Plaintiff] to be separated." *Id.*

According to Inspector Woo's affidavit from the USPS EEO office's investigation, Inspector Woo

spoke with Plaintiff and Mr. Baptista that same day and told them to stay away from each other and

to report any problems to their immediate supervisors. Scharf Decl. Ex. G, at 117. Plaintiff

contends, in her USPS EEO Affidavit, that the next day, on February 29, 2008, nothing had

changed. Scharf Decl. Ex. F, at 61. According to Inspector Woo's affidavit from the USPS EEO

office's investigation, Plaintiff called Inspector Woo on February 29 and March 1, 2008. Scharf

Decl. Ex. G, at 117. Plaintiff told Inspector Woo that Mr. Baptista was still harassing her and that

management had not told Mr. Baptista to stay away from Plaintiff. *Id.* According to Plaintiff's

USPS EEO Affidavit, on March 3, 2008, MDO Kim returned from vacation and asked Plaintiff

about her problem with Mr. Baptista. Scharf Decl. Ex. F, at 62. On March 6, 2008, Plaintiff "went

into the police station to make a report on the assault." *Id.*

According to Plaintiff's USPS EEO Affidavit, Plaintiff was further harassed by Mr.

Baptista and "management" when she was called into a meeting on March 6, 2008, to discuss the

investigation into Mr. Baptista's alleged misconduct. Scharf Decl. Ex. F, at 48, 62; *see also* Opp'n

6. Although it was Plaintiff's understanding that the purpose of the meeting was for Inspector Woo

to update her on his investigation, when Plaintiff arrived she realized there were several other

people other than Inspector Woo at the meeting. Scharf Decl. Ex. F, at 63. Present were

Supervisors Gomez and Anguiano, MDO Kim, Inspector Woo, Nick Mandel, and Mr. Baptista. *Id.*

at 62-63. According to Inspector Woo's affidavit from the USPS EEO office's investigation,

Inspector Woo assured Plaintiff that no discipline was being contemplated against her and that the

Inspection Service viewed Plaintiff as the victim. Scharf Decl. Ex. G, at 118; *see also* Medina

Dep. 122:4-7. Plaintiff claims in her USPS EEO Affidavit that she felt harassed and intimidated at

the meeting because, before she could even sit down, Inspector Woo verbally attacked her and

accused her of being guilty. Scharf Ex. F, at 64. Plaintiff alleges that Inspector Woo said: "My

recommendation is, just stay away from each other. I don't know what happened, I don't care what

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

happened.  Be cordial.  We do not deal with sexual harassment in the postal inspector service."  *Id.*
Plaintiff also contends that Joe Anguiano and MDO Kim similarly accused Plaintiff of being the
guilty party.  *Id.* at 65.

According to Inspector Woo's affidavit from the USPS EEO office's investigation,
Inspector Woo called the March 6, 2008 meeting and requested that Plaintiff, Mr. Baptista, their
respective supervisors, and the senior MDO attend.  *Id.* at 117-18.  Inspector Woo called the
meeting so that he could advise "all parties of the problem" and the need for "Medina and Baptista
to stay away from each other and to address any issues with their respective supervisors."  *Id.* at
118.  At the time of the March 6, 2008 meeting, Inspector Woo had determined that Plaintiff's
grievance against Mr. Baptista "was more of a personnel matter" "involving personality conflicts"
"to be handled by postal supervisors."  *Id.*

According to Plaintiff's USPS EEO Affidavit, Inspector Woo did not answer her initial
grievance statement, failed to take the investigation seriously, and failed to follow through on the
investigation.  Scharf Decl. Ex. F, at 66.  Plaintiff also claims that MDO Kim shared her grievance
statement with her harasser, Mr. Baptista, and allowed Mr. Baptista to be present in the closed
meeting on March 6, 2008.  *Id.*  Finally, Plaintiff claims that Supervisor Anguiano showed and
discussed Plaintiff's grievance statement with Mr. Baptista.  *Id.* at 67.

According to Plaintiff's USPS EEO Affidavit, she left work after the March 6, 2008
meeting, Scharf Decl. Ex. F, at 71.  According to MDO Kim's declaration from the USPS EEO
office's investigation, Plaintiff did not return until late November 2008.  Scharf Decl. Ex. S, at 73.
According to Plaintiff's USPS EEO Affidavit, Management offered Plaintiff the opportunity to
return under the condition that she not work in the same area or building as Mr. Baptista, Scharf
Decl. Ex. F, at 73; that a safety plan be created for Plaintiff, *id.*; and that she be allowed to choose
her hours and time off.  Scharf Decl. Ex. M; *see also id.* Ex. S, at 73.  According to MDO Kim's
declaration from the USPS EEO office's investigation, MDO Kim made "an attempt to obtain
another assignment for Plaintiff."  Scharf Decl. Ex. S, at 73.  According to MDO Kim, Plaintiff
selected the hours she preferred and requested and received Saturdays and Sundays off.  *Id.*

11

**United States District Court**
For the Northern District of California

1    According to MDO Kim, Plaintiff returned to work in a light duty position from November 27,

2    2008, through December 5, 2008, but has not returned to work since. *Id.* Plaintiff stated at the

3    summary judgment hearing that she returned to work on November 17, 2008, and left on December

4    5, 2008. Hr'g Tr. 17:22-18:4.

5         *Other Harassment.* Finally, Plaintiff claims in her summary judgment opposition that Mr.

6    Baptista would draw "cartoon characters depicting [her] in various poses with a male in a sexual

7    way taping them to the wall next to the entrance of the cc room." Opp'n 10. It is unclear when this

8    incident occurred. Allegations about this incident do not appear in the USPS EEO office's

9    Investigative Report or the attached affidavits, and were therefore not before the USPS EEO AJ or

10   the EEOC on appeal. There is also no evidence that Plaintiff's supervisors were made aware of

11   this incident.

12        **B.      Procedural History**

13        On March 7, 2008, Plaintiff contacted a USPS EEO Counselor regarding her discrimination

14   and harassment claims. *See Medina v. Potter*, Appeal No. 0120101405, at 1 (EEOC July 23,

15   2010). Pursuant to regulations, because informal efforts to resolve Plaintiff's concerns were

16   unsuccessful, on June 17, 2008, Plaintiff filed a complaint with the USPS EEO office, claiming

17   employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

18   *Id.*[4]

19        The USPS EEO office conducted an investigation into Plaintiff's claims that: "Since 2003,

20   complainant has been harassed, stalked, intimidated, insulted, and threatened by a co-worker, yet

21   management has neglected to take any action to remedy the situation, and, on March 6, 2008,

22   complainant was subjected to a meeting wherein she was harassed and intimidated, and her

23   harassment allegation was not addressed." *Id.* at 1-2.[5] The relevant facts from the USPS EEO

24   office's Investigative Report are summarized in Section I.A, above.

25

26   [4] If a matter is not resolved informally, a complainant may file a complaint with her agency's EEO office within 15 days. 29 C.F.R. § 1614.105(d) (2012); *id.* § 1614.106(b).

27   [5] The agency is required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint. 29 C.F.R. § 1614.106(e)(2).

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

1    On January 19, 2010, the USPS EEO AJ issued a final order, without a hearing, finding no

2    discrimination. *Id.* at 2. The USPS EEO AJ found that events before February 2008 were time

3    barred because Plaintiff failed to "report any incidents of harassment between March 2004 and

4    February 2009, except for an alleged attempt to break into her car in January 2006 which was

5    found not to have occurred following an internal investigation." *Id.* at 2 n.2. The USPS EEO AJ

6    found no evidence that the alleged harassment was motivated by Plaintiff's sex or national origin.

7    *Id.* at 2. The USPS EEO AJ also found no evidence "indicating that the investigation [by

8    Plaintiff's supervisor] was not reasonable, was not supported by the factual evidence examined, or

9    that the investigator himself exhibited discriminatory animus." *Id.* at 3.

10   On February 10, 2010, Plaintiff appealed the USPS EEO AJ's decision to the EEOC. The

11   EEOC affirmed the USPS EEO AJ's finding of no discrimination. The EEOC found that the USPS

12   EEO AJ properly declined to hold a hearing because there was "no genuine issue of material fact

13   which would require a hearing to be held." *Id.* at 4. The EEOC also found that the USPS EEO AJ

14   properly limited "the scope of the formal complaint to the events that occurred in 2008." *Id.* at 4.

15   The EEOC reasoned that Plaintiff's filings properly before the EEOC focused "on the March 6,

16   2008 meeting and the events that followed"; Plaintiff had previously dropped her 2003 sexual

17   harassment complaint filed with the USPS EEO office; and Plaintiff did not report to her

18   supervisors incidents prior to 2008. *Id.* The EEOC found that USPS's response to Plaintiff's

19   complaints was adequate given that for some incidents "[Plaintiff] did not report the behavior or

20   put it in writing," and in the other incidents "an investigation was conducted by the [USPS]." *Id.* at

21   5. The EEOC also found that Plaintiff failed to establish "any nexus between her sex and national

22   origin and the [USPS's] failure to find that she was subjected to harassment by a co-worker." *Id.* at

23   5.

24   Plaintiff received a Notice-of-Right-to-Sue letter on July 23, 2010, and filed the instant suit

25   on October 21, 2010. Defendant filed his motion on July 1, 2011. ECF No. 30. Plaintiff filed her

26   opposition on July 28, 2011. ECF No. 36. Defendant filed his reply on August 4, 2011. ECF No.

27   37. The Court held a hearing on the motion on October 20, 2011. At the hearing, the parties

28

*United States District Court*
For the Northern District of California

13

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1  represented that they were very close to reaching settlement, and Defendant requested the Court to

2  take the matter under submission and delay issuing this order to allow the parties an opportunity to

3  finalize a settlement agreement.  Hr'g Tr. 24:6-26:19.  On October 27, 2011, the parties informed

4  the Court that they were unable to reach a settlement.  ECF Nos. 43, 46.  Plaintiff's letter to the

5  Court, filed October 27, 2011, stated that the Assistant United States Attorney ("AUSA") did not

6  communicate well with her and that they could not reach an agreement.  ECF No. 46.  The parties

7  also asked to be referred to a Magistrate Judge Settlement Conference, which the Court did on

8  October 27, 2011.  ECF No. 45.  On November 9, 2011, the Court referred Plaintiff to the Federal

9  Pro Bono Project.  ECF No. 49.  On December 15, 2011, the Court appointed pro bono counsel for

10  Plaintiff, which stayed the proceedings for four weeks from that date.  ECF No. 50.  The Court

11  gave pro bono counsel and the AUSA until February 6, 2012, to explore settlement.  ECF No. 55.

12  Counsel were unable to resolve the case.  ECF No. 57.  The Magistrate Judge Settlement

13  Conference will take place on February 24, 2012.  ECF No. 55.

14  **II.      Legal Standard**

15      **A.      Summary Judgment**

16        Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary

17  judgment if the movant shows that there is no genuine dispute as to any material fact and the

18  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those

19  that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

20  (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury

21  could return a verdict for the nonmoving party."  *See id.*  In determining whether there is a material

22  factual dispute, the Court considers admissible evidence in "depositions, documents, electronically

23  stored information, affidavits or declarations, stipulations (including those made for purposes of the

24  motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c).  The

25  Court must view the evidence in the light most favorable to the non-moving party and draw all

26  justifiable inferences in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.

27

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1      The moving party bears the initial responsibility for informing the district court of the basis

2  for its motion and identifying those portions of the evidentiary record that it contends demonstrate

3  the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4  (1986).

5      A party opposing a properly supported motion for summary judgment "may not rest upon

6  the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts

7  showing that there is a genuine issue for trial."  *See also Anderson*, 477 U.S. at 250.  The non-

8  moving party need not show the issue will be resolved conclusively in its favor.  *See Id.* at 248–49.

9  All that is necessary is submission of sufficient evidence to create a material factual dispute,

10  thereby requiring a jury or judge to resolve the parties' differing versions at trial.  *See id.*  A non-

11  moving party's "conclusory, self-serving affidavit, lacking detailed facts and any supporting

12  evidence, is insufficient to create a genuine issue of material fact."  *Nelson v. City of Davis*, 571

13  F.3d 924, 929 n.2 (9th Cir. 2009) (quoting *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168,

14  1171 (9th Cir. 1997)).

15  **III.**     **Discussion**

16     **A.**     **Deemed Admissions**

17      As an initial matter, Defendant argues that Plaintiff failed to respond to Requests for

18  Admission within 30 days of service, and that these requests should therefore be deemed admitted

19  pursuant to Federal Rule of Civil Procedure 36(a).  Before a matter may be deemed admitted

20  against a pro se litigant for failure to respond to a request for admission, "the request for admission

21  should contain a notice advising the party to whom the request is made that, pursuant to Rule 36 of

22  the Federal Rules of Civil Procedure, the matters shall be deemed admitted unless said request is

23  responded to within thirty (30) days after service of the request or within such shorter or longer

24  time as the court may allow."  *See Jefferson v. Perez*, CIV S-09-3008 GEB, 2011 WL 4760796, at

25  *2 (E.D. Cal. Oct. 7, 2011) (quoting *Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998); citing

26  *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988)).  Although Defendant's Requests for

27  Admission stated that "failure to respond to these Requests for Admission in a timely manner will

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

cause these facts to be deemed admitted," Defendant failed to cite Federal Rule of Civil Procedure 36(a) as the authority for this proposition and to inform Plaintiff that the time period to respond was thirty days.  *See* Scharf Decl. Ex. P, at 63.

Moreover, Rule 36(b) "permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) 'the presentation of the merits of the action will be subserved,' and (2) 'the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'"  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

Where, as here, "[t]he admissions go directly to the ultimate questions at issue in this case," "the presentation of the merits of this action would be subserved if defendant were allowed to prevail on the matters deemed to be admitted under Rule 36."  *Kirk v. Richards*, CIV S-10-0373 GEB, 2011 WL 4374999, at *3 (E.D. Cal. Sept. 19, 2011) *report and recommendation adopted*, CIV S-10-0373 GEB, 2011 WL 4591075 (E.D. Cal. Sept. 30, 2011).  Here, Defendant requested Plaintiff to admit that: (1) she "cannot establish a prima facie case of discrimination and/or retaliation and/or harassment"; and (2) "all actions being challenged by [Plaintiff] were taken for legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons."  Scharf Decl. Ex. T, at 77.  The Court finds that the presentation of the merits would be subserved if Defendant is able to prevail on the matters deemed admitted, particularly when Plaintiff is pro per and has opposed the motion for summary judgment.  Moreover, Defendant has not shown any prejudice given that Defendant had the opportunity to depose Plaintiff, will have the opportunity to cross-examine Plaintiff at trial, and has Plaintiff's discovery responses and affidavit as well as the entire record from the USPS EEO proceedings.

Accordingly, the Court exercises its discretion under Rule 36(b) to grant relief for matters deemed admitted under Rule 36(a), and decides the motion on the merits.

## B.   Hostile Work Environment

### 1.   Timeliness of Plaintiff's Claims Prior to 2008

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1        Defendant argues that Plaintiff's claims occurring prior to February 2008 are untimely

2    "because they are not part of the same actionable hostile work environment practice for which

3    plaintiff filed her EEO claim."  Mot. 10-11.

4        Plaintiff argues that her claims are timely because she "constant[ly] and continuous[ly]"

5    complained of harassment from 2003 through 2008.  Opp'n 2.  Moreover, she explains her failure

6    to raise some of the incidents on the ground that she was only able to uncover them through

7    "lengthy therapy sessions."  *Id.*

8        To bring a federal action on a hostile work environment claim, a Plaintiff must contact an

9    EEO Counselor within 45 days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1) (2012).

10   Plaintiff contacted a USPS EEO Counselor on March 7, 2008.  Thus, any event occurring on or

11   after January 21, 2008, occurred within the filing period.

12       "Provided that an act contributing to [a hostile work environment] claim occurs within the

13   filing period, the entire time period of the hostile environment may be considered by a court for

14   purposes of determining liability," even if "some of the component acts of the hostile work

15   environment fall outside the statutory period."  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S.

16   101, 117 (2002).  Acts that fall outside the filing period and are unrelated to a timely hostile work

17   environment claim are barred by the timeliness requirement.  *Id.* at 118.  Thus, to determine

18   whether the component acts constitute "one unlawful employment practice [the Ninth Circuit]

19   considers whether the earlier and later events amounted to the same type of employment actions,

20   occurred relatively frequently, or were perpetrated by the same managers."  *Porter v. Cal. Dept. of

21   Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Morgan*, 536 U.S. at 116, 118, 120, 122)

22   (internal quotations and alterations omitted).

23       Defendant argues that the incidents occurring before February 2008 are not part of the same

24   actionable hostile work environment for three reasons: (1) Plaintiff does not allege that the

25   harassment by Baptista was continuous; (2) many of the allegations are against different

26   supervisors and co-workers other than Baptista; and (3) Plaintiff either did not report the pre-2008

27   incidents to management or management responded to Plaintiff's concerns.  The Court disagrees.

28

**United States District Court**
For the Northern District of California

17

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

To survive summary judgment on a hostile work environment claim based on sexual harassment, Plaintiff must show that: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter*, 419 F.3d at 892 (citing *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)).

The facts in *Porter* are analogous.  As in *Porter*, here, "the record contains sufficient evidence to permit an inference" that Supervisors Navarrro and Gomez and Mr. Baptista created a sexually hostile environment that began in 2003 and persisted beyond February 2008.  419 F.3d at 894.  In *Porter*, the Ninth Circuit reversed the district court's grant of summary judgment based on a finding that plaintiff's hostile work environment claim was time barred.  As here, the *Porter* plaintiff received unwanted advances before the limitations period and then was subjected to "derogatory" remarks and the same "type of sexist activity" after the limitations period; "to wit, intimidating or demeaning the value of female employees who do not submit to demands for sexual favors."  *Id.* at 894.  Specifically, before the limitations period, the *Porter* plaintiff's harassers "sexually propositioned her and made offensive comments about her," *id.* at 893; sometime during the limitations period they "glared at [her] in an intimidating fashion" and referred to her as a "fucking bitch."  *Id.*  Here, Plaintiff has submitted evidence that before the limitations period she rejected unwanted sexual advances from Supervisors Gomez and Navarro and Mr. Baptista.  *E.g.,* Opp'n 4; Scharf Decl. Ex. F, at 53, 90, 95; Medina Dep. 45:7-15, 46:14-23.  There is also evidence that Mr. Baptista glared at her threateningly; called her a "bitch"; and attempted to batter her with a forklift while saying "I want you sexually" and mouthing "I want to F you."  *E.g.*, Scharf Decl. Ex. F, at 49-50; Medina Dep. 106:2-15.  As in *Porter*, therefore, the "alleged verbal and physical conduct was of an unwelcome sexual nature and, when taken together as a whole, it was sufficiently severe *and* pervasive to create an abusive work environment."  419 F.3d at 894 (emphasis in original).  Accordingly, Plaintiff has established a timely prima facie case of hostile work environment based on sexual harassment spanning from 2003 through 2008.

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## 2. Failure to Raise Claims with the USPS EEO Office

Defendant also argues that Plaintiff's additional allegations of sexual harassment raised for the first time during this lawsuit are barred "because they were never investigated or reviewed by the [USPS] EEO [office]." *Id.* at 12-13.

A plaintiff may not raise discrimination claims that are not "like or reasonably related to the allegations contained in" the administrative charge. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475 (9th Cir.1990)).  Courts construe the language of the administrative charge "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)). "Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the [USPS EEO office's] actual investigation or an investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.*  In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, a court considers the following factors: (1) "the alleged basis of the discrimination"; (2) "dates of discriminatory acts specified in the charge"; (3) "perpetrators of discrimination named in the charge"; and (4) "any locations at which discrimination is alleged to have occurred." *Id.*  "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.*

Here, Plaintiff's claims before the USPS EEO office and subsequently the EEOC on appeal were based on harassment "based on . . . sex (female)."  ECF No. 1, at 2.  The USPS EEO office's investigation encompassed the following claims: "Since December 2003, complainant has been harassed, stalked, intimidated, insulted, and threatened by a co-worker . . . ." *Id.* at 4.  Plaintiff's evidence before the USPS EEO office names Supervisors Gomez and Navarro and Mr. Baptista, among others, as perpetrators of the harassment that is alleged to have occurred at the San Jose P&DC between 2003 and 2008.  Thus, Plaintiff's complaint before the USPS EEO office and the USPS EEO office's investigation encompassed sexual harassment claims before this Court.

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Defendant is correct that the following Plaintiff allegations were not before the USPS EEO

2    office: rape; oral sex propositioning; pretend masturbation with a plastic sleeve; Mr. Baptista's

3    asking her out on dates; and Mr. Baptista's threatening Plaintiff with a forklift while saying "I want

4    you sexually" and mouthing "I want to F you."  However Defendant is incorrect that allegations of

5    sexual innuendo and sexual harassment were not before the USPS EEO office.  Plaintiff's medical

6    records, which were included in the USPS EEO office's Investigative Report, contain allegations

7    of sexual harassment.  *See, e.g.*, Scharf Decl. Ex. F, at 89-90 ("[Plaintiff] stated that her male co-

8    workers have been making sexual innuendos (e.g. taking a folded, small umbrella, putting it in

9    between their legs and making sexual gestures/comments."); *id.* at 95 (containing Plaintiff's

10   complaint regarding Supervisor Navarro, reporting "little innuendos, caressing & touching . . . after

11   ask[ing] him to stop").

12    Moreover, the Court finds that Plaintiff's new allegations of sexual misconduct, while not

13   part of the record before the USPS EEO office and the EEOC on appeal, are "like or reasonably

14   related" to the allegations in the administrative complaint, and "fell within the scope of the [USPS

15   EEO office's] actual investigation or a [USPS EEO office] investigation which can reasonably be

16   expected to grow out of the administrative charge of discrimination."  *B.K.B.*, 276 F.3d at 1100.

17    Accordingly, Plaintiff's sexual harassment claims are not barred for failure to exhaust her

18   remedies before the USPS EEO office and the EEOC.  At trial, Plaintiff may attempt to introduce

19   evidence of sexual harassment going back to 2003.

20                    **3.  Plaintiff's Prima Facie Case for Hostile Work Environment**

21    Defendant argues that Plaintiff cannot establish a prima facie case for hostile work

22   environment because she was not subjected to severe or pervasive conduct based on race or gender.

23   Mot. 13.

24    The Court agrees that Plaintiff has presented no evidence of hostile conduct based on race

25   besides her conclusory "gut feeling" at her May 25, 2011 deposition.  Medina Dep. 74:24.

26   Furthermore, Plaintiff conceded at her deposition and at the hearing on this motion that her lawsuit

27

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

is "not really" about race.  *Id.* at 78:20; Hr'g Tr. 2:18.  Therefore, Plaintiff has failed to establish a prima facie case of hostile work environment based on race.

As discussed above, however, once the Court considers the admissible evidence of the alleged actions of Supervisors Navarro and Gomez and Mr. Baptista from the entire period of 2003-2008, in the light most favorable to Plaintiff, Plaintiff has established her prima facie case for hostile work environment based on sexual harassment.

Defendant's reliance on *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000), is unavailing.  Mot. 13.  Defendant cites *Kortan* for the proposition that offensive language alone has been held not to rise to the level of hostile work environment.  *See id.* (citing *Kortan*, 217 F.3d at 1111).  Plaintiff here, however, has alleged and submitted evidence of far more than just offensive language.  As discussed in Section 3.B.1, the Court finds *Porter* more on point, which found such language, coupled with reprisals for rejected sexual advances, sufficient to establish a hostile work environment based on sexual harassment.  *Porter*, 419 F.3d at 894.  Like the plaintiff in *Porter*, Plaintiff has submitted evidence not only of repeatedly being called a "bitch" and being publicly ridiculed by a posted sign saying "pre-menopausal women work here," *e.g.*, Scharf Decl. Ex. F, at 50, 53, but also of sexual advances and retaliation for rejecting sexual advances, *e.g.*, Opp'n 2-4; Medina Dep. 45:7-15, 106:2-15; Scharf Decl. Ex. F, at 90, 95.

Accordingly, Plaintiff has established a prima facie hostile work environment claim based on sexual harassment.

### 4.  Adequate Remedial Measures

Defendant argues that even if Plaintiff established a prima facie case for hostile work environment, USPS took adequate remedial measures to address her complaints.  Mot. 16-18.  Defendant argues that Plaintiff knew of USPS's "zero-tolerance policy" and knew of the USPS EEO office where she could have, but did not, complain about her alleged sexual harassment.  Mot. 11 (citing Medina Dep. 65:1-8).

Defendant avails himself of the affirmative defense in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), which allows an employer to avoid vicarious liability for a hostile

21

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    environment "created by a supervisor with immediate (or successively higher) authority over the

2    employee" if he shows the following: "(a) that the employer exercised reasonable care to prevent

3    and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee

4    unreasonably failed to take advantage of any preventive or corrective opportunities provided by the

5    employer or to avoid harm otherwise."  Demonstration of Plaintiff's failure to use any complaint

6    procedure provided by the employer "will normally suffice to satisfy the employer's burden under

7    the second element of the defense."  *Id.* at 807-08

8            An employer can also avoid liability for a hostile work environment caused by co-workers,

9    as opposed to supervisors, by:

> undertaking remedial measures 'reasonably calculated to end the harassment.'
> *Ellison*, 924 F.2d at 882; *see also Yamaguchi v. United States Dep't of the Air
> Force*, 109 F.3d 1475, 1482 (9th Cir. 1997).  "The reasonableness of the remedy
> depends on its ability to: (1) 'stop harassment by the person who engaged in the
> harassment;' and (2) 'persuade potential harassers to refrain from unlawful
> conduct.'"  *Nichols*, 256 F.3d at 875 (quoting *Ellison*, 924 F.2d at 882).  To be
> adequate, an employer must intervene promptly.  *Intlekofer v. Turnage*, 973 F.2d
> 773, 778 (9th Cir.1992).  Remedial measures must include some form of
> disciplinary action, *Yamaguchi*, 109 F.3d at 1482, which must be "proportionate[ ]
> to the seriousness of the offense," *Ellison*, 924 F.2d at 882 ("Title VII requires more
> than a mere request to refrain from discriminatory conduct.").

*See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1120 (9th Cir. 2004).

18           As the Ninth Circuit has noted, the adequacy of an employer's response "presents a mixed

19   question of law and fact."  *Star v. West*, 237 F.3d 1036, 1038 (9th Cir. 2001).  Summary judgment

20   is not appropriate on issues involving mixed questions of law and fact where the underlying facts

21   are disputed.  *See Boy Scouts of Am. v. Graham*, 86 F.3d 861, 864 (9th Cir. 1995) (reversing

22   district court's grant of summary judgment on mixed question of law and fact where "reasonable

23   persons, applying the proper legal standard," could find in favor of the nonmoving party).  The

24   Court finds that there is a genuine issue of material fact as to whether USPS took adequate

25   remedial measures in response to all of the reported incidents of sexual harassment.

26           It is undisputed that Plaintiff did not report Supervisor Navarro's harassment from 2000

27   until August 20, 2003, when she eventually contacted the USPS EEO office.  It is also undisputed

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

1    that Plaintiff did not report or write up Supervisor Gomez for slapping her behind, the unnamed co-

2    worker who allegedly raped her in 2004, or Mr. Baptista for requesting oral sex in 2006.  Although

3    Plaintiff reported the February 15, 2008 incident in which Mr. Baptista drove the forklift at

4    Plaintiff and glared at her in a threatening way, Scharf Decl. Ex. F, at 49-50, there is no evidence

5    that Plaintiff reported the additional allegations that Mr. Baptista said "I want you sexually," and

6    mouthed the phrase "I want to F you."

7              However, there is a material factual dispute as to whether the USPS's response to the

8    alleged "pre-menopausal women" sign in 2003 was adequate.  Although removing the sign "was a

9    necessary first step, the record before us reveals no actions taken by [USPS] to ensure that"

10   Plaintiff's coworkers' conduct demeaning the value of female employees "would cease, and in fact

11   it did not cease."  *See McGinest*, 360 F.3d at 1120-21.  "[M]anagement neither called a meeting of

12   the workforce to condemn the [sexual] harassment nor issued 'a warning announcing the

13   employer's abhorrence of [sexual] harassment.'"  *Id.* (citing *Daniels v. Essex Group*, 937 F.2d

14   1264, 1267, 1275 (7th Cir. 1991)).  In fact, if Defendant took "no remedial action whatsoever," the

15   Ninth Circuit has held that "the offender's voluntary cessation of harassing conduct [is] in itself

16   insufficient to discharge the defendant's remedial obligation."  *Star*, 237 F.3d at 1039 (citing *Fuller

17   v. City of Oakland*, 47 F.3d 1522, 1528-29 (9th Cir. 1995)).

18             There is also a material factual dispute as to whether the USPS adequately responded to the

19   two incidents where Mr. Baptista pretended to masturbate in front of Plaintiff in 2003.  Plaintiff

20   testified that she reported these incidents, but that her supervisors responded by saying that Mr.

21   Baptista was "just playing," Medina Dep. 45:22-25, and by telling Plaintiff to "just let it go."  *Id.* at

22   47:17-48:7.

23             There is also a material factual dispute as to whether Plaintiff's USPS supervisors were

24   made contemporaneously aware of the content of Plaintiff's 2004 medical records, which contain

25   evidence of sexual harassment.  If supervisors at the USPS received these medical records and/or

26   notice of their content contemporaneously, then they would have been on notice of the alleged

27   harassment and would have been required to undertake remedial measures.  *See McGinest*, 360

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    F.3d at 1119.  At the hearing, Defendant's counsel was unable to state whether or when Defendant

2    became aware of the contents of Plaintiff's medical records contained in the USPS EEO office's

3    Investigative Report.  Hr'g Tr. 12:5-13:19.  At the hearing, Plaintiff stated that she brought in a

4    doctor's note each time she visited her doctors between 2003 and 2008.  Hr'g Tr. 12:25-13:19.  On

5    this record, it is unclear whether or when Defendant was on notice of the contents of Plaintiff's

6    medical records.  Thus, a jury must resolve these factual issues.

7        There is also a material factual dispute as to whether Supervisor Gomez's response was

8    prompt or adequate on February 21, 2008, when he allegedly observed Mr. Baptista calling

9    Plaintiff a "bitch" and telling her to "shut up."  Scharf Decl. Ex. F, at 51.  Although Supervisor

10   Gomez claims he immediately admonished Mr. Baptista to stop, Scharf Decl. Ex. E at 37, Plaintiff

11   claims that Supervisor Gomez never tried to stop Mr. Baptista's rant.  Scharf Decl. Ex. F, at 51.  At

12   the hearing, Defendant's counsel admitted there was not "any discipline" for this incident, but only

13   "on-the-spot counseling."  Hr'g Tr. 23:1-2.  Although *Star v. West*, 237 F.3d at 1039 (emphasis

14   added), heavily relied upon by Defendant, noted that "counseling or admonishing the offender *can*

15   constitute an adequate 'disciplinary' response," it does not compel such a finding.

16       There is also a material factual dispute as to whether Plaintiff "unreasonably failed to take

17   advantage of any preventive or corrective opportunities provided by the employer or to avoid harm

18   otherwise."  *Faragher*, 524 U.S. at 807.  Although Plaintiff admits she did not do "everything in

19   her power" to bring Mr. Baptista's alleged misconduct to management's attention, Medina Dep.

20   63:18-21, that is not the standard she must meet.  Moreover, Plaintiff claims she complained orally

21   to Supervisor Gomez about Baptista approximately "a thousand times."  *Id.* at 63:18-24.

22       Accordingly, the Court DENIES Defendant's motion for summary judgment as to

23   Plaintiff's hostile work environment claim based on sexual harassment.  The Court GRANTS the

24   motion as to Plaintiff's hostile work environment claim based on racial harassment.

### C.    Race and Gender Disparate Treatment Discrimination

26       Defendant also argues that Plaintiff's race and gender disparate treatment discrimination

27   claims fail the *McDonnell Douglas* framework because there is no individual similarly situated to

28

24

United States District Court
For the Northern District of California

Plaintiff that was treated more favorably; no adverse job action has been taken against her; and she fails to show pretext. Mot. 19-20. Again, as Plaintiff has conceded that this lawsuit is "not really" about race, and she has failed to provide any evidence of racial discrimination, the Court focuses on her gender discrimination claim.

### 1. Statute of Limitations

As an initial matter, the Court notes that Plaintiff's disparate treatment discrimination claims are limited to the events occurring after January 21, 2008. Unlike hostile work environment claims, where a component act can occur before the limitation period so long as one component act occurred during the limitation period, "each incident of discrimination constitutes a separate actionable 'unlawful employment practice,'" and each must be timely challenged. *Morgan*, 536 U.S. at 114. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* at 113. For purposes of Plaintiff's disparate treatment discrimination claims, therefore, the Court focuses on the events of February and March 2008, through the lens of Plaintiff's hostile work environment claim from 2003-2008 as background.

### 2. Prima Facie Case of Disparate Treatment Discrimination

"A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of race" or another protected characteristic. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). A plaintiff can establish disparate treatment discrimination through: (1) direct or circumstantial evidence of discriminatory intent, or (2) through the *McDonnell Douglas Corp. v. Green* burden-shifting framework. 411 U.S. 792 (1973).

The Court agrees with Defendant, Mot. 19, that Plaintiff does not offer direct evidence of gender bias against her. Even assuming that Mr. Baptista's use of the epithet "bitch" on February 21, 2008, Scharf Decl. Ex. F, at 50, was a discriminatory act, Mr. Baptista was a co-worker, and

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   not a "decisionmaker."  Therefore his actions cannot serve as direct evidence of the employer's

2   bias.  *See Vasquez*, 349 F.3d at 640.

3   In the absence of direct evidence of discrimination, Plaintiff would have to establish a

4   prima facie case using the *McDonnell Douglas* framework.  First, Plaintiff must establish a prima

5   facie case of discrimination.  *McDonnell Douglas*, 411 U.S. 792, at 802-04.  If Plaintiff establishes

6   a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory

7   reason for its action.  *Id.*  If Defendant articulates a legitimate, non-discriminatory reason, the

8   burden shifts back to Plaintiff to demonstrate that the employer's stated reason was a pretext for

9   unlawful discrimination.  *Id.*

10   Plaintiff can establish a prima facie case if she shows that: "(1) [s]he is a member of a

11   protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse

12   employment action; and (4) similarly situated-individuals outside of h[er] protected class were

13   treated more favorably."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

14   Plaintiff, while represented during the USPS EEO office proceedings, admitted in

15   Responses to Interrogatories that she could not identify a similarly situated individual who was

16   treated more favorably than her.  Scharf Decl. Ex. P, at 63.  Although Plaintiff contends that Mr.

17   Baptista was *similarly situated* to her, Plaintiff has not adduced any evidence that Mr. Baptista was

18   treated *more favorably* than Plaintiff.  In fact, Mr. Baptista also complained that his harassment

19   grievances were neither timely nor adequately addressed.  Scharf Decl. Ex. C, at 25.  Because

20   failure to identify a similarly situated individual who was treated more favorably is sufficient

21   grounds for finding that Plaintiff has failed to establish a prima facie case of disparate treatment

22   discrimination, *Peterson*, 358 F.3d at 603, the Court need not address the parties' other arguments.[6]

23   Accordingly, the Court GRANTS Defendant's motion for summary judgment as to gender

24   and race disparate treatment discrimination.

25   **IV.   Conclusion**

26   _____

[6] The Court finds nevertheless that Plaintiff would have a difficult time showing that she suffered
27   an adverse employment action given that she left work on her own accord and was allegedly given
the opportunity to return with flexibility in her schedule to avoid having contact with Mr. Baptista.

28

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

1    For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment

2   as to Plaintiff's hostile work environment claim based on racial harassment and Plaintiff's

3   disparate treatment claims based on race and gender.  The Court DENIES Defendant's motion as to

4   Plaintiff's hostile work environment claim based on sexual harassment.

5   **IT IS SO ORDERED.**

6

7   Dated: February 23, 2012



8                                              LUCY H. KOH
                                               United States District Judge

9

Case No.: 10-CV-04760-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT